UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| IN RE:<br><br>**LUKE VAN WALCH AND JANINE RETZ WALCH,**<br><br>Debtors. | Case No. 23-11420 TBM<br><br>Chapter 7 |
| **FLATIRONS BANK,**<br><br>Plaintiff,<br><br>v.<br><br>**LUKE VAN WALCH,**<br><br>Defendant. | Adversary No. 23-01168 TBM |

**JOINT PRETRIAL STATEMENT**

COMES NOW Flatirons Bank ("Plaintiff") and Luke Van Walch ("Defendant"), by and through their respective undersigned counsel, hereby submit the following Joint Pretrial Statement:

**A.     CLAIMS AND DEFENSES**

**Plaintiff's Claims**

In its Complaint, Plaintiff asserts that the debt owed to it by the Debtor should be excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(6).  Plaintiff alleges that entered into a Business Loan Agreement (the "Loan Agreement") with Green Eyed Motors, LLC ("GEM") in April 2014, pursuant to which Plaintiff provided floor plan financing to GEM.  On December 17, 2021, the Loan Agreement was modified to increase the maximum loan amount to $2,000,000.00 and the maturity date was extended to April 8, 2024.

GEM granted Plaintiff a security interest in, among other things, all of GEM's vehicle inventory, pursuant to a Commercial Security Agreement dated April 8, 2014 (the "Security Agreement").  The Security Agreement required GEM to immediately remit any proceeds of the sale of vehicles to Plaintiff.  As additional security for the obligations due under the Loan Agreement, Plaintiff required Defendant to execute a Commercial Guaranty in favor of Plaintiff whereby Defendant guaranteed prompt and full payment to Plaintiff of all of GEM's obligations to Plaintiff.

On or about January 17, 2023, Defendant contacted David Kinney, Plaintiff's Chief Banking Officer to discuss cash flow concerns at GEM.  During this meeting, Defendant explained to Mr. Kinney that that GEM was experiencing a cash flow crunch, which was reportedly the result of rapid volatility in the auto market (caused primarily by supply chain issues), lingering impacts from COVID-19, and a delay in GEM's dealership building construction project and expected new revenue channel.  Defendant further informed Mr. Kinney that due to these challenges, beginning in late summer or early fall 2022, GEM had incurred losses and had exhausted its working capital, and had knowingly and on a repeated basis sold inventory financed by Bank and used the proceeds of the such sales (the "Out of Trust Sales") to cover operating losses, overhead expenses, and pay other creditors, in an effort to keep GEM's business operational.  The Out of Trust Sales totaled $1,365,196.00.

Defendant hid his actions by selling the inventory without obtaining the titles to the vehicles from the Bank and delivering the vehicles to the retail buyers without delivering the related titles, and by making the minimum curtailment payments for aged inventory.  As a board member of Colorado Motor Vehicle Dealer Board and an experienced car dealership owner with multiple floor plan lines, Defendant was aware or substantially certain that his actions in selling the Plaintiff's collateral and retaining the proceeds of such sales instead of remitting them to Plaintiff would harm Plaintiff.

As of April 7, 2023, Defendant owed Plaintiff $1,083,817.70.  Plaintiff has recovered $121,044.22 towards this balance from other sources, leaving a balance owed of $962,773.48.

**Defendant's Defenses**

Plaintiff notes that the business relationship with Plaintiff is at least ten years old.  Plaintiff relies on the word "trust" as a substitute for "fiduciary."   The word fiduciary appears nowhere in any of the agreements executed by Defendant.

Judge Tallman addressed the issue of what is required for a party to stand in a "fiduciary capacity." *In re Steele,* 292 B.R. 422 (Bankr. D. Colo 2003).  The *Steele* court ruled that neither a general fiduciary duty of confidence, **trust**, loyalty and good faith, nor an inequality between the parties' knowledge or bargaining power, is sufficient to establish a "fiduciary" relationship.  The *Steele* Court further ruled that an express or technical trust must exist in order for a [party] to stand in a "fiduciary capacity" to another party.

Admittedly, Plaintiff's argument is well-taken.  The *Steele* case interpretation of 11 U.S.C. § 523(a)(4), and specifically a finding of breach of a fiduciary duty, requires the existence of either an express or statutory trust.  Defendant cannot locate any applicable Colorado statute imposing a fiduciary duty on a retailer to hold monies in trust for a bank. The question therefore turns upon whether, as a threshold question, the use of the word *trust* creates a "technical trust" within the meaning of the exception.  Defendant's position is that there was not a technical trust.  Defendant leaves that matter, obviously, to this Honorable Court.

Defendant then turns to the US Supreme Court case of *Bullock v. BankChampaign, N.A. (In re Bullock)*, 569 U.S. 267 (2013).  Subsequent to the *Steele* decision, the Supreme Court focuses

on the modifier "defalcation." Unlike many of the preceding opinions, finding a breach of fiduciary duty the equivalent of "strict liability," The Court requires a finding of a culpable state of mind. As such the act must involve "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior. *Bullock,* 569 U.S. at 273-74.

Defendant is expected to testify that he has been in business for many years. The evidence will show that there was no "gross recklessness" rising to the level of what the Model Penal Code provides, as cited in *Bullock.* Within the lens of *Bullock*, Defendant will argue, the bar is relatively high as to Plaintiff's burden of proof. Given the longevity of the business, the struggle to keep the doors open, the history of loan payments, no evidence of conversion of a goodly amount of funds for the Defendant's benefit beyond operating the business, all questions of fact, will not demonstrate a "defalcation" of a fiduciary. Assuming he was a fiduciary.

As to the claim for "willful and malicious injury by the debtor to another entity or to the property of another entity," simply stated, neither the facts nor case law support the exception to discharge. Section 523 (a)(6) is the "garbage can" cause of action cited by creditors who suffer money damages. Often cited -- rarely proven.

B. **STIPULATED AND UNCONTESTED FACTS**

The Parties agree that the following facts should be accepted as true by the Court.

1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334(a) and (b). This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(I) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Bank consents to the entry of final orders or judgment by this Court.

2. Defendant was a member manager of GEM. GEM was a used car dealership that operated in Frederick, Colorado. Defendant was involved in GEM's day-to-day business and was in control of GEM's finances, including the disposition of sales proceeds received from GEM's customers.

3. GEM entered the Loan Agreement with Plaintiff. Same was executed on April 8, 2014.

4. None of Plaintiff's exhibits for trial contain the word "fiduciary."

5. Pursuant to the Loan Agreement, the Plaintiff provided floor-plan financing for a portion of GEM's inventory. Defendant signed the Loan Agreement on behalf of GEM.

6. Under the terms of the Loan Agreement, Plaintiff granted GEM a line of credit in the amount of Five Hundred Thousand and no/100 Dollars ($500,000.00) for the purpose of financing GEM's inventory purchases for its used car lot. Between October 14, 2015, and December 17, 2021, the Bank and GEM entered into five (5) Change in Terms Agreements (the "CIT Agreements"). The CIT Agreements increased the loan amount to $2,000,000.00; extended the maturity date to April 8, 2024 and required GEM to submit quarterly inventory reports and required curtailment payments on aged inventory.

7. As a condition of extending credit to GEM, the Bank required Defendant to execute a Commercial Guaranty (the "Guaranty") in favor of Plaintiff, whereby Defendant guaranteed prompt and full payment to the Bank of all obligations of GEM pursuant to the Loan Agreement.

8. Between April 8, 2014, and January 17, 2023, the Bank advanced funds (the "Advances") to GEM at Defendant's request, for GEM's purchases of inventory pursuant to the terms of the Loan Agreement.

9. The vehicles purchased with the Advances constituted Collateral under the Loan Agreement.

10. On numerous occasions between the Fall of 2022 and Winter of 2023, GEM sold Plaintiff's Collateral to customers and neither GEM nor Defendant requested certificate of title for the Collateral at the time of the sale, rather Defendant waited until GEM had sufficient funds to pay off the vehicle sold to request the certificate of title from Plaintiff. These sales totaled $1,365,196.00.

11. Defendant understood that floor plan financing is a transaction in which traditional lenders such as banks provide short-term loans to retailers to purchase items and the retailers repay the banks as items are sold.

12. GEM at the direction of Defendant used the proceeds from the sale of Plaintiff's Collateral to pay GEM's operating expenses.

13. In January 2023, Defendant met with David Kinney to discuss GEM's business operations.

14. Beginning on August 22, 2019, and ending on June 30, 2022, Walch served as a board member on the Colorado Motor Vehicle Dealer Board.

15. On April 7, 2023 (the "Petition Date"), Defendant and his wife filed a Joint Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code, thereby initiating Case No. 23-11420-TBM.

16. As of the Petition Date, Walch was indebted to the Bank in the amount of $1,083,817.70.

C.  **POINTS OF LAW**

**Plaintiff's Points of Law**

The party seeking to except its claim from discharge must prove all elements of the discharge exception by a preponderance of the evidence. *Grogan v. Garner*, 111 S.Ct. 654 (1991).

Pursuant to 11 U.S.C. § 523(a)(6), a discharge under Section 727 of Title 11 does not discharge an individual debtor from any debt – for willful and malicious injury by the debtor to

another entity or to the property of another entity.

Section 523(a)(6) excepts from a debtor's general discharge, debts arising from intentional torts, that is, acts taken with an intent to injure the creditor. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). A "willful injury may be established by direct evidence of specific intent to harm a creditor or creditor's property…[or] evidence of both the debtor's knowledge of the creditor's…rights and the debtor's knowledge that the conduct will cause particularized injury." *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (B.A.P. 10th Cir. 1989). A willful and malicious injury can be established if plaintiff establishes that the debtor wished to cause injury or at least believed the injury was substantially certain to occur. *Via Christi Regional Medical Ctr. V. Englehart (In re Englehart)*, 2000 U.S.App. LEXIS 22754 at * 3 (10th Cir. Sept. 8, 2000).

Based on Defendant's experience in the used car industry and his knowledge of floor plan financing, he was substantially certain that failure to repay the Plaintiff upon the sale of vehicles that were Plaintiff's collateral would harm the Plaintiff.

### Defendant's Points of Law

Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." [11 U. S. C. §523(a)(4)](). We here consider the scope of the term "defalcation." We hold that it includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior.
*Bullock v. BankChampaign*, NA, 569 U.S. 267, 133 S.Ct. 1754 (2013), at 1756.

Dated this 28th day of March, 2024

**OTTESON SHAPIRO LLP**

By:  /s/ *John C. Leininger*
John C. Leininger
Colorado Bar No.  55829
[jcl@os.law]()

7979 E. Tufts Ave., Suite 1600
Denver, Colorado 80237
Telephone:  (720) 488-0220

**ATTORNEYS FOR FLATIRONS BANK**

**BERKEN CLOYES, PC**

By:  /s/ *Stephen Berken*

Stephen E. Berken
Berken Cloyes, PC
Reg. No.: 14926
stephenberkenlaw@gmail.com
1159 Delaware Street
Denver, CO 80204
Telephone:  (303) 623-4357

**ATTORNEYS FOR LUKE VAN WALCH**